**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 11 2004**

**PATRICK FISHER**
**Clerk**

<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

DOUGLAS VICTOR MATHIS,

      Defendant - Appellant.

No. 02-7138

---

**Appeal from the United States District Court**
**for the Eastern District of Oklahoma**
**(D.C. No. CR-02-44-S)**

---

Jeffrey A. Gallant (Sheldon J. Sperling, United States Attorney, with him on the brief), Assistant United States Attorney for the Plaintiff-Appellee.

Eddie Christian, Jr., (Dan George, Sallisaw, Oklahoma with him on the briefs), Fort Smith, Arkansas for the Defendant-Appellant.

---

Before **KELLY**, **LUCERO,** and **McKAY**, Circuit Judges.

---

**LUCERO**, Circuit Judge.

At issue in this case are several claims of error regarding the issuance of a search warrant, which include the sufficiency and reliability of an affidavit containing multiple layers of hearsay as a basis for the search warrant. The

district court rejected the defendant's arguments, including that the warrant improperly relied upon unreliable and stale hearsay, and found instead that the magistrate had a substantial basis to find probable cause to issue a warrant to search the defendant's residence. We take the district court's position on the issues and, exercising jurisdiction pursuant to 28 U.S.C. § 1291, affirm.

## I

On March 9, 2001, a warrant was executed at defendant Douglas Mathis's residence authorizing a search for records and other evidence of his purported illegal activities, including distribution of methamphetamine and possession of stolen vehicles. During the execution of the warrant, law enforcement agents observed Mathis run out the back door of the residence and drop a small pouch from his hand; authorities also found drug paraphernalia at the residence. Robert Walden, an investigator for the District Attorney and the affiant for the first search warrant, then requested a second warrant to search Mathis's residence for evidence of possession and distribution of methamphetamine. The second warrant was executed the same day and, as a result of evidence obtained under these warrants, Mathis was arrested.

Mathis was indicted June 13, 2002 by a federal grand jury; the three count indictment charged him with drug and firearms violations, including the manufacture, distribution, and use of methamphetamine. Mathis moved to

suppress the evidence obtained pursuant to the two warrants, alleging that the information upon which the magistrate judge relied in issuing the first warrant was stale and based on impermissible hearsay and, therefore, that the warrant issued without probable cause.

Specifically, Mathis alleged that the probable cause supporting the first search warrant rested almost entirely upon information from four confidential cooperating witnesses (CW #1-4). According to Mathis, the information provided by those cooperating witnesses was stale, inconsistent, and filtered through an unknown number of law enforcement agents before reaching the affiant, Walden. As a result, Mathis claimed the magistrate who issued the warrants had no substantial basis upon which to accept the cooperating witnesses' information, and without such a basis, the first search warrant lacked probable cause. Because the first search warrant was not based on probable cause, Mathis continued, any evidence obtained under the second warrant was tainted and must also be suppressed.

After filing the motion to suppress, Mathis also filed a motion to compel disclosure of the identity of the confidential informants who provided information to Walden. The district court held hearings on both motions and conducted an in camera inspection of documents which revealed the identities of the informants at issue. When the court denied both motions, Mathis conditionally pled guilty to

Count Two of the indictment, possession with intent to distribute methamphetamine. He was sentenced to ninety-six months in prison, followed by forty-eight months of supervised release. Mathis appeals to this court, arguing that the district court erred both in denying his motion to suppress the evidence and in denying his motion to reveal the identities of the confidential informants.

## II

We consider: (1) whether the first search warrant lacked probable cause due to hearsay and staleness problems such that all evidence obtained under either search warrant should be suppressed, see Wong Sun v. United States, 371 U.S. 471, 484 (1963); and (2) if due to alleged inconsistencies between the accounts of two of the cooperating witnesses, the prosecution must reveal the identities of those witnesses to Mathis in order to allow him to mount an effective defense, see Rovario v. United States, 353 U.S. 53, 61–62 (1957).

## A

The United States Constitution requires that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. Const., amend IV. While the phrase "probable cause" is not self-defining, the Supreme Court has described the probable cause inquiry as a "commonsense, practical question" to be informed by the totality of the circumstances present in any particular case. Illinois v. Gates, 462 U.S. 213, 230 (1983).

Mathis initially argues that the first search warrant lacked probable cause because the affidavit underlying the search warrant was based upon unknown layers of hearsay. The problem, Mathis contends, is that Walden did not receive the information he described in the affidavit from the cooperating witnesses directly; rather, each cooperating witness related his or her tale to other law enforcement agents who then passed along the information to Walden. Mathis claims the magistrate's reliance on Walden's testimony regarding information relayed through multiple layers of hearsay resulted in the issuance of a search warrant unsupported by probable cause.

As Mathis concedes, hearsay evidence may form the basis for a probable cause determination. See, e.g., Jones v. United States, 362 U.S. 257, 269 (1960); United States v. Snow, 919 F.2d 1458, 1460 (10th Cir. 1990). Moreover, we have previously recognized that multiple layers of hearsay may support a finding of probable cause for a search warrant. United States v. $149,442.43 in U.S. Currency, 965 F.2d 868, 874 n.3 (10th Cir. 1992). Despite this clear precedent, Mathis insists that in this case the affiant, Walden, was not sufficiently proximate to the investigation to effectively corroborate the hearsay evidence to which he attested. Mathis reasons that because Walden had not independently verified the information provided by law enforcement agents, and because he did not personally obtain the tips from the cooperating witnesses, he could not personally

be aware of, or accountable for, the accuracy of the information contained in his sworn affidavit. Therefore, Mathis urges, Walden's oath was meaningless and as a consequence, the magistrate erred in relying upon the hearsay contained in the affidavit.

To bolster his argument, Mathis points to the Court's discussion in Jones:

> In testing the sufficiency of probable cause for an officer's action even without a warrant, we have held that he may rely upon information received through an informant, rather than upon his direct observation, so long as the informant's statement is reasonably corroborated by other matters within the officer's knowledge.

Jones, 362 U.S. at 269. Mathis's reliance on Jones is misplaced. Jones did not require an officer to corroborate information received from an informant through personal observation as Mathis would have us hold. Rather, an officer simply must have knowledge of other matters that reasonably corroborate the informant's statements. Mathis's contention that Walden did not have sufficient personal knowledge of corroborating information thus fails.

Next we consider the argument that because an unknown number of law enforcement agents were involved in transmitting the informant's tips from the witnesses to Walden, the magistrate judge had no basis for determining the reliability (or in one instance, the identity[1]) of these links in the hearsay chain,

---

[1] In the affidavit, Walden does name the law enforcement agents from whom he received CW #1–3's information; nonetheless, in the case of CW #4, the
(continued...)

and thus, no substantial basis upon which to conclude the underlying tips were reliable. We restate that multiple layers of hearsay may form the basis of a finding of probable cause. $149,442.43 in U.S. Currency, 965 F.2d at 874 n.3. Moreover, it is not necessary to reveal the identities of the individuals providing information to the police; hearsay from unknown or unnamed individuals has been recognized as acceptable support for a finding of probable cause. See, e.g., Gates, 462 U.S. at 237–238 (approving of anonymous citizen tips).

Rugendorf v. United States, 376 U.S. 528 (1964), decided shortly after Jones, also directly undercuts Mathis's argument. In Rugendorf, the defendant, on facts similar to those presently before us, attacked a search warrant as invalid because the affidavit upon which it was based contained hearsay from confidential informants passed to the affiant by other law enforcement agents. 376 U.S. at 529–531. Without explicitly analyzing each of the multiple layers of hearsay present, the Court concluded that a valid probable cause determination requires only a substantial basis to find that evidence of a crime was probably present in the place to be searched. Id. at 533; accord United States v. Ventresca, 380 U.S. 102, 111 (1965) (regarding hearsay from police officers: "[o]bservations of fellow officers of the Government engaged in a common investigation are

[1](...continued)
affidavit does not provide the identity of or information regarding the reliability of the law enforcement agent(s) who furnished Walden with CW #4's story.

plainly a reliable basis for a warrant applied for by one of their number."); <u>Snow</u>, 919 F.2d at 1460 (finding that hearsay evidence from other police officers' informants, bolstered in part with separate corroboration, was sufficient to support probable cause). On these authorities, we reject Mathis's contention that the hearsay evidence in this case was inherently unreliable and move to the primary inquiry in any probable cause determination: did the magistrate, in considering the information which he was provided, make a practical, common-sense judgment that there was a fair probability that evidence of a crime would be present at Mathis's residence? <u>See</u>, <u>e.g.</u>, <u>Snow</u>, 919 F.2d at 1460.

Generally, we give considerable deference to a magistrate's determination of probable cause; a reviewing court's only duty is "to ensure that the magistrate had a substantial basis for concluding that probable cause existed." <u>Gates</u>, 462 U.S. at 236, 238 (quotation omitted). When judging information provided by an informant as the foundation supporting probable cause for a search warrant, we consider the informant's veracity, reliability, and basis of knowledge as relevant factors to evaluate in assessing whether "given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." <u>Id.</u> at 238. In addition, a law enforcement agent's opinion, based upon his professional expertise, that evidence of illegal activity will be found in the place to be searched, is entitled to consideration in

our determination of whether probable cause existed at the time a warrant issued. United States v. Wicks, 995 F.2d 964, 972 (10th Cir. 1993); $149,442.43 in U.S. Currency, 965 F.2d at 874; United States v. Corral-Corral, 899 F.2d 927, 937 (10th Cir. 1990).

In reviewing the denial of Mathis's motion to suppress, we uphold a district court's findings of fact unless they are clearly erroneous. United States v. Danhauer, 229 F.3d 1002, 1005 (10th Cir. 2000). Because Mathis claims the affidavit in this case does not adequately support a finding of probable cause, we first consider the extensive factual findings of the district court. The district court found, inter alia, that in June 1999 cooperating witness #1 (CW #1) and a man named Frank Chambers were observed by surveilling officers driving to Mathis's residence. The officers saw Chambers enter the residence, leave a short time later to return to the vehicle, and drive away with CW #1. CW #1 stated that he or she had provided Chambers with $1200 cash to buy methamphetamine; CW #1 later provided 20.5 grams of methamphetamine to the DEA, purportedly from this transaction.

The second cooperating witness (CW #2) informed an FBI special agent that he or she had known Mathis for over two years and had seen Mathis sell methamphetamine at least twenty-five times between approximately February 1999 and August 2000. During the same period, CW #2 purportedly witnessed

Mathis trade drugs for stereos and other items and overheard a conversation where Mathis claimed he routinely cooked methamphetamine at his residence. CW #2 further asserted that he or she observed a dark colored, 1968 Chevrolet truck and a white truck with red paint dots on it at Mathis's home and that a network of video cameras and police scanners were operating whenever CW #2 was present at the residence.

Professing to have known Mathis for over three years, the third cooperating witness (CW #3) stated that he or she had personally observed Mathis sell methamphetamine over fifty times, including a sale in January 2001. CW #3's observations of the quantity of methamphetamine Mathis generally sold in a transaction, Mathis's willingness to accept goods in exchange for methamphetamine, his use of a network of video cameras and police scanners, his admission that methamphetamine was cooked at the residence, and that a white truck with red painted dots was present at the residence, all corroborate CW #2's observations. In addition, Investigator Walden drove by Mathis's residence in March of 2001 and observed a 1968 pickup fitting CW #2 and CW #3's description. Lastly, cooperating witness #4 (CW #4), in late January 2001, informed the FBI of his personal knowledge that Mathis had distributed and continued to distribute significant quantities of methamphetamine, and that he or she had obtained methamphetamine from Mathis on a few occasions.

In summary, the district court found that the affidavit contained reliable information provided to law enforcement by the confidential informants; that each cooperating witness' basis of knowledge had been stated, i.e., each personally knew Mathis and his residence; that the information provided by the informants was internally corroborated in several respects; and that Walden had extensive law enforcement experience, including training in investigations of illegal narcotics. On these grounds, the court determined that sufficient facts were available to establish a substantial basis to believe that evidence of a crime would be found at Mathis's residence. Our review of the affidavit and the record does not persuade us that these findings of fact were erroneous. Furthermore, we conclude that given all the circumstances set forth in the affidavit, the magistrate had a substantial basis upon which to conclude that there was a fair probability that contraband or evidence of illegal activity would be present at Mathis's residence at the time the search warrant was issued. We therefore conclude that the magistrate's reliance on hearsay information as a basis for probable cause to support the first search warrant was not in error.

**B**

As for Mathis's argument that the evidence in the affidavit was stale, we have previously held that "[p]robable cause to search cannot be based on stale information that no longer suggests that the items sought will be found in the

place to be searched." Snow, 919 F.2d at 1459. Mathis contests the age or reliability of the information supplied by each of the cooperating witnesses. For example, Mathis contends that CW #1 could only provide information regarding one incident, which occurred in 1999, nearly two years before the search warrant was executed. While CW #2 provided relatively more recent information regarding Mathis's alleged criminal activity, his or her observations were limited to a period prior to August 2000, months before the search warrant was executed. Though CW #3's account provided information regarding Mathis's criminal activity proximal to the time of the search warrant's execution, Mathis argues that CW #3's account conflicts with CW #2's account. Accordingly, Mathis maintains, the only reliable substantiated information regarding his alleged criminal activity dated back to August of 2000. CW #4's account, which related the most recent criminal activity by Mathis, was not as detailed as the other three cooperating witnesses tips; therefore this information was inherently unreliable and could not rescue the other witnesses' fatally stale information.

Mathis's argument fails on several grounds. First, we reject Mathis's claim that the information provided by CW #2 and CW #3 are contradictory, simply because the last date on which each witness claims to have seen Mathis's illegal activities differs. Mathis has offered no evidence beyond theorizing that CW #2 and CW #3 might have been in a relationship and therefore might have been at the

residence at the same time that the dates should match.

Second, Mathis ignores our case law, which has firmly established that "whether information is too stale to establish probable cause depends on the nature of the criminal activity, the length of the activity, and the nature of the property to be seized." Snow, 919 F.2d at 1460 (quotation omitted). Mathis was suspected of continuous and ongoing drug activity; information from the cooperating witnesses dated Mathis's criminal venture to June 1999, and observations by various witnesses continued through January of 2001. "Such ongoing and continuous activity makes the passage of time less critical" when judging the staleness of information upon which a search warrant is based. Id.; accord, United States v. Le, 173 F.3d 1258, 1267 (10th Cir. 1999); United States v. Myers, 106 F.3d 936, 939 (10th Cir. 1997). Mathis's reliance upon the passage of time alone to demonstrate the staleness of the witnesses' accounts is unavailing.

We reject also Mathis's contention that the information relied upon by the magistrate was unsubstantiated and therefore unreliable. Walden himself verified that a few days before the search warrant was executed, a particular truck, believed to be stolen and described by CW # 2 and CW #3, was still present at Mathis's residence; as a result, at least part of CW #2 and CW #3's information was confirmed immediately prior to the warrant's execution. For the foregoing

reasons, it is quite clear to us that the information contained in the affidavit was not impermissibly stale or unreliable such as would preclude establishment of probable cause.

In sum, we affirm the district court's determination that the first warrant issued was supported by probable cause; it is therefore unnecessary to address the district court's alternative analysis concerning the <u>Leon</u> good faith exception for warrants issued without probable cause. <u>United States v. Leon</u>, 468 U.S. 897 (1984).

## II

The second general allegation of error is that the district court erred in denying Mathis's motion to compel disclosure of the identities of CW #2 and CW #3. In addition to the appeal of the district court's denial, Mathis has filed a petition with this court asking to supplement the record on appeal to include a transcript of the in camera hearing conducted by the district court, at which the identities of CW #2 and CW #3 were disclosed. We review the district court's exclusion of evidence for an abuse of discretion. <u>United States v. Davis</u>, 40 F.3d 1069, 1073 (10th Cir. 1994); <u>United States v. Bowser</u>, 941 F.2d 1019, 1021 (10th Cir. 1991). In evaluating whether the district court abused its discretion in denying Mathis's motion to compel disclosure of confidential informants, we are guided by <u>Rovario</u>: "Where the disclosure of an informer's identity, or of the

contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." 353 U.S. at 60-61. However, "[m]ere speculation about the usefulness of an informant's testimony is not sufficient to warrant disclosure." United States v. Brantley, 986 F.2d 379, 383 (10th Cir. 1993).

Underlying Mathis's request for disclosure is his contradiction theory; specifically, the information from CW #2 and CW #3 is strikingly similar in all aspects except for the last date on which they reportedly observed Mathis's drug activities. Given that the witnesses' observations parallel in all other respects, Mathis argues, it stands to reason that they were present in the Mathis residence at the same time and might even be husband and wife. He concludes that because these witnesses were likely present in his residence at the same time, their information should match in all respects, including the dates each witness observed his illegal undertakings. Mathis tells us that the alleged contradiction between CW #2 and CW #3 is critically important because the information provided by these two witnesses was integral to the magistrate judge's determination that probable cause existed. Because he claims the relationship between the two cooperating witnesses is crucial to his contradiction theory, Mathis asserts it is essential to his defense that the identities of these two cooperating witnesses be revealed.

However, the district court considered these arguments at an in camera hearing and determined that the revelation of the informant's identities was not relevant to Mathis's defense. Additionally, the court found that Mathis had provided no evidence that CW #2 and CW #3 were at his residence at the same time. Regarding Mathis's hypothesis that CW #2 and CW #3 may have been husband and wife and therefore should have identical observations, the court correctly observed, "[e]ven a husband and wife are not always at the same location at the same time. Simply because [CW #2 and CW #3's] observations are not identical does not mean they are incorrect or inconsistent." United States v. Mathis, CR-02-00044, at 13, Aug. 2, 2002. We agree.

Mathis has marshaled the mere speculation that if CW #2 and CW #3 were in a relationship, any inconsistencies in their observations of Mathis's illegal activities renders their accounts contradictory and unreliable. Such speculation is insufficient to warrant the disclosure of the identities of confidential informants. We conclude that the district court did not abuse its discretion in denying Mathis's motion to compel disclosure of the identities of CW #2 and CW #3. Further, we deny Mathis's motion to supplement the record on appeal with the transcript of the district court's in camera hearing.

**III**

**AFFIRMED**.

-16-