FILED
United States Court of Appeals
Tenth Circuit

April 23, 2010

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

No. 09-7091

WILLIAM DAVID BURKHART,

    Defendant - Appellant.

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA
(D.C. No. 08-CR-00059-RAW-1)**

---

Christopher Wilson, Assistant United States Attorney, (and Sheldon J. Sperling, United States Attorney, on the brief), Muskogee, Oklahoma, for Plaintiff - Appellee.

Robert Ridenour, Assistant Federal Public Defender, (Julia L. O'Connell, Federal Public Defender and Barry L. Derryberry, Research and Writing Specialist of Office of the Federal Public Defender, with him on the brief), Tulsa, Oklahoma, for Defendant - Appellant.

---

Before **TACHA**, **KELLY**, and **HOLMES**, Circuit Judges.

---

**KELLY**, Circuit Judge.

---

    Defendant-Appellant William David Burkhart pled guilty to possession of

one or more matters containing a visual depiction of a minor engaging in sexually

explicit conduct, in violation of 18 U.S.C. § 2252(a)(4)(B). Mr. Burkhart received a sentence of 84 months, followed by 60 months of supervised release. Mr. Burkhart appeals the district court's denial of his motion to suppress the evidence found in a search of his home, having reserved the right to do so in his plea agreement. We have jurisdiction under 28 U.S.C. § 1291 and affirm. The search was reasonable under the Fourth Amendment: probable cause existed to search Mr. Burkhart's home and, in any case, the good faith exception applies.

Background

In the fall of 2006, the European Law Enforcement Organization ("Europol") investigated a child pornography ring and found an Italian national operating a web site that sold child pornography online. 1 R. 33, 135. Europol searched the Italian's residence and found thousands of emails that he exchanged with customers. 1 R. 34. Europol sent the FBI about 10,000 emails between the Italian suspect and U.S. citizens. Id. Among these emails with U.S. citizens, the FBI found forty-five messages between the Italian's email address and davidburkhart@sbcglobal.net. 1 R. 135-36. These emails verified purchases of various videos of a 13-year-old girl, the most recent message dated December 2, 2005. 1 R. 78. In April 2007, the FBI obtained from AT&T via an administrative subpoena the subscriber information for davidburkhart@sbcglobal.net. William David Burkhart, the subscriber, was listed as living at 1020 East Polk, Apartment

3, McAlester, Oklahoma. 1 R. 136. John Fitzer, an FBI agent, could not confirm that a William David Burkhart still lived at the East Polk address. 2 R. 25. Agent Fitzer found a William D. Burkhart in the Oklahoma Department of Motor Vehicles database with the same date of birth as William David Burkhart. 2 R. 27-29. William D. Burkhart had vehicles registered at two addresses in the McAlester area: 5490 Center Avenue and 5217 Carl Albert Road, which are located about a two-minute drive away from each other. 2 R. 28-29, 33.

Agent Fitzer prepared separate applications and affidavits for separate search warrants for each address. 1 R. 27-45, 69-91. The affidavits were identical in most respects: they set out Agent Fitzer's training and experience in law enforcement generally, and computer storage systems and child pornography investigations in particular. Id. The affidavits related how the Europol investigation led to a William David Burkhart, the nature of the videos believed to be in Mr. Burkhart's possession, the characteristics of child pornography collectors, and descriptions of the places to be searched and the items to be seized. Id. The affidavit for the Carl Albert Road address related a few links between a William D. Burkhart and that address: the DMV database listed a William D. Burkhart living at that address, a Jeep Cherokee was parked at that address and William D. Burkhart registered a Jeep Cherokee at that address, and the U.S. Postal Service confirmed that William D. Burkhart received mail there. 1 R. 36. Similarly, the affidavit for the Center Avenue address said that a Dodge

pickup truck registered to a William D. Burkhart was parked there, that the mailbox had "Burkhart" on it, and that William D. Burkhart received mail there. 1 R. 78. Neither affidavit referred to the other one. Agent Fitzer presented both applications and affidavits to the magistrate judge at the same time on May 6, 2008. 2 R. 31-32. The magistrate took them into her office for a period of time, then returned, placed the agent under oath, took his statement that the affidavits were true and accurate, and signed the warrants in front of the agent. 2 R. 32, 45.

Federal agents executed both warrants at the same time on May 8, 2008. 1 R. 9, 2 R. 43. At the 5490 Center Avenue address, Mr. Burkhart's ex-wife informed agents that he no longer lived there. 2 R. 33. Agents halted the execution of this warrant and returned it unserved. Id. At 5217 Carl Albert Road, agents found William David Burkhart, the Defendant, as well as more than 400 DVDs with images of child pornography. 1 R. 99-100, 2 R. 33-34. The district court denied Mr. Burkhart's motion to suppress, 1 R. 262, over his objections to the magistrate judge's report and recommendation, 1 R. 98-132.

## Discussion

"When reviewing the district court's denial of a motion to suppress, we view the evidence in the light most favorable to the government and accept the district court's factual findings unless they are clearly erroneous." United States v. Grimmett, 439 F.3d 1263, 1268 (10th Cir. 2006) (citation omitted). We review

- 4 -

de novo the legal question of reasonableness under the Fourth Amendment. Id. Nonetheless, "[i]f the search . . . was done pursuant to a warrant, we review the issuing judge's finding of probable cause with great deference: we look to ensure that the judge had a substantial basis for concluding that the affidavit in support of the warrant established probable cause." Id. (internal quotation marks and citation omitted). "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983).

Mr. Burkhart argues that Agent Fitzer's affidavit did not establish probable cause to search his home for three reasons: (1) by the time that the warrants were executed, the information from Europol was so old as to be stale; (2) the affidavit failed to show a nexus between the suspected possession of child pornography and Mr. Burkhart's home; and (3) each affidavit undermined the probable cause in the other affidavit. Aplt. Br. at 10-15.

Generally, "probable cause to search cannot be based on stale information that no longer suggests that the items sought will be found in the place to be searched." United States v. Mathis, 357 F.3d 1200, 1206-07 (10th Cir. 2004) (brackets, internal quotation marks, and citation omitted). "[W]hether information is too stale to establish probable cause depends on the nature of the

criminal activity, the length of the activity, and the nature of the property to be seized." Id.

When federal agents executed the warrant for Mr. Burkhart's home in April 2008, about two years and four months had passed since December 2, 2005, the date of the most recent email between the Italian child porn distributor and davidburkhart@sbcglobal.net. Mr. Burkhart argues that this passage of time, combined with the lack of additional emails after the December 2005 email and the fact that he no longer lived at the mailing address provided to his email service provider, indicated that he voluntarily ceased attempts to obtain the child pornography. Aplt. Br. at 11-13.

Although the amount of time between the most recent email and the search gives us some pause, the "passage of time alone" cannot demonstrate staleness. Mathis, 357 F.3d at 1207. In child pornography cases, the nature of the criminal activity and the nature of the property to be seized are especially relevant factors. Mr. Burkhart was charged with *possession* of child pornography, not acquiring it. His offense did not cease with his last purchase, but continued as long as he possessed the videos. His emails supported the magistrate's probable cause determination because they conclusively showed that he bought the videos. From that fact, one could reasonably infer that he likely still possessed the videos. The most recent evidence of Mr. Burkhart's possession, the December 2005 email, occurred well within the five-year statute of limitations. See 18 U.S.C. § 3282.

The volume of Mr. Burkhart's emails with the porn distributor as well as his enthusiasm supported Agent Fitzer's theory that Mr. Burkhart collected the videos. See 1 R. 78-79 ("I can't wait to watch her again," "Thank you for the N26, she was great as always, maybe a little better in this one! . . . She has to be the most beautiful girl in the world, and you are a very lucky fellow to have her model for you."). These facts, combined with Agent Fitzer's observation that collectors "typically retain [the materials] for many years," 1 R. 79, formed a substantial basis for the magistrate to determine that a fair probability existed that the videos would be found in Mr. Burkhart's home. See Mathis, 357 F.3d at 1205 ("[A] law enforcement agent's opinion, based upon his professional expertise, that evidence of illegal activity will be found in the place to be searched, is entitled to consideration in our determination of whether probable cause existed at the time a warrant issued.").

This court has repeatedly endorsed the "view that possessors of child pornography are likely to hoard their materials and maintain them for significant periods of time." United States v. Potts, 586 F.3d 823, 830 (10th Cir. 2009); see also United States v. Perrine, 518 F.3d 1196, 1206 (10th Cir. 2008); United States v. Riccardi, 405 F.3d 852, 861 (10th Cir. 2005). The Riccardi court explained that such a view

> is supported by common sense and the cases. Since the materials are illegal to distribute and possess, initial collection is difficult. Having succeeded in obtaining images, collectors are unlikely to destroy

them. Because of their illegality and the imprimatur of severe social stigma such images carry, collectors will want to secret them in secure places, like a private residence.

405 F.3d at 861 (citations omitted). Mr. Burkhart acknowledges these cases, but claims that they are based on the outdated realities of regular mail, rather than the relative ease of anonymous collection through the Internet. Aplt. Br. at 11-12.

We are not persuaded. Admittedly, the Internet's speed, anonymity, and burgeoning porn market have lowered some practical barriers for any collector with a few hours, a high speed connection, and a credit card. But child pornography is still illegal to distribute and possess, and still carries severe social stigma, whether the possessor receives it by regular mail, email, or over the Internet. The illegality and social stigma may also complicate resale or disposal. Moreover, acquiring pornography is rarely free. Given the nature of the evidence to be seized, the Internet context may mitigate *against* staleness: information that a person received electronic images of child pornography is less likely than information about drugs, for example, to go stale because the electronic images are not subject to spoilage or consumption. United States v. Frechette, 583 F.3d 374, 378 (6th Cir. 2009). Instead, electronic files "can have an infinite life span." Id. We fail to see how even "on demand" Internet availability removes the incentive to hoard what has been collected. Besides the Sixth Circuit, three other federal circuits have endorsed the hoarding observation. United States v. McArthur, 573 F.3d 608, 613-14 (8th Cir. 2009); United States v. Falso, 544 F.3d

110, 132 (2nd Cir. 2008); United States v. Watzman, 486 F.3d 1004, 1008 (7th Cir. 2007).  No facts negate the fair probability that the videos would be found in Mr. Burkhart's home.  Mr. Burkhart points to the period between the last email with the Italian porn distributor in December 2005 and Europol's search in the fall of 2006 as evidence that he voluntarily quit trying to obtain pornography and, therefore, "the hoarding assumption is due little or no weight."  Aplt. Br. at 12.  However, the cessation of efforts to procure the videos is not inconsistent with the theory that Mr. Burkhart was hoarding the videos: a person may very well keep hoarding long after he stops acquiring.

Mr. Burkhart's second argument suggesting a lack of probable cause is that the affidavit did not establish a nexus between the suspected criminal activity and the place to be searched.  Aplt. Br. at 13; see United States v. Roach, 582 F.3d 1192, 1202 (10th Cir. 2009).  Mr. Burkhart doubts that Agent Fitzer conclusively determined that the William D. Burkhart living at the Carl Albert address was the same William David Burkhart who lived at the East Polk address.  Law enforcement is not required to establish a nexus beyond a reasonable doubt.  Agent Fitzer's representations to the magistrate that he confirmed with the DMV and the post office that a William D. Burkhart lived at the Carl Albert address, and that a car matching the make and model of William D. Burkhart's was parked out front sufficiently linked Mr. Burkhart to the home.  The magistrate judge reasonably concluded that a fair probability existed that Mr. Burkhart lived at the

Carl Albert address, and that the child pornography videos would be found in his home.

Third, Mr. Burkhart argues that the lack of probable cause was evident from Agent Fitzer's presentation of two separate affidavits justifying the searches of two separate residences. Aplt. Br. at 14-16. That is, "when the affidavits are read together, it becomes apparent that if one affidavit is right, the other must be wrong." Aplt. Br. at 15. Probable cause means that a fair probability exists that the evidence to be seized will be found in a particular place, not absolute certainty to the exclusion of all other places. If one warrant can authorize a search for multiple locations, United States v. Langston, 970 F.2d 692, 703 (10th Cir. 1992); United States v. Rios, 611 F.2d 1335, 1347 (10th Cir. 1979), surely law enforcement may obtain multiple warrants for multiple locations, so long as they demonstrate probable cause as to each location. Because probable cause existed to search the Carl Albert address, the warrant was valid.

Any deficiency of probable cause in the Carl Albert affidavit is cured by the good faith exception to the exclusionary rule. "[E]vidence obtained pursuant to a warrant that is later found to be defective is not properly excluded when the warrant is relied on by the officers in objective good faith." United States v. Gonzales, 399 F.3d 1225, 1229 (10th Cir. 2005); see also United States v. Leon, 468 U.S. 897, 922 (1984). The good faith exception does not always prevent exclusion: "there are four contexts where an officer cannot be found to have

relied on a warrant in good faith." <u>Gonzales</u>, 399 F.3d at 1229. Mr. Burkhart claims that one such context applies here: the affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." <u>Id.</u> (quoting <u>Leon</u>, 468 F.3d at 923) (quotations omitted).

Mr. Burkhart restates his argument that "any reasonable officer would have known that each [affidavit] rendered the other devoid of factual support." Aplt. Br. at 18. In other words, when it comes to probable cause, the two addresses are mutually exclusive. As explained above, some indicia of probable cause existed for each address because Agent Fitzer linked the name William D. Burkhart through DMV records, mail delivery, and vehicles parked at each address. The existence of probable cause for one address did not eliminate probable cause for the other address. Mr. Burkhart also implies that the lack of "Burkhart" on the mailbox at the Carl Albert address, when compared to the mailbox at the Center Avenue address, stripped the Carl Albert address of probable cause. <u>Id.</u> In light of the other connections between William D. Burkhart and the Carl Albert address, the suspect's last name on the mailbox was not necessary for probable cause. Because the affidavit contained some indicia of probable cause, the good faith exception applies and exclusion of the evidence is not appropriate.

AFFIRMED.