FILED
United States Court of Appeals
Tenth Circuit

**September 13, 2010**

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

TYLER N. ROBBINS,

      Defendant-Appellant.

No. 10-3078
(D.C. No. 5:09-CR-40002-JAR-1)
(D. Kan.)

_____

**ORDER AND JUDGMENT**[*]

Before **BARRETT, ANDERSON,** and **BRORBY**, Circuit Judges.


After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.


Appellant Tyler N. Robbins appeals his conviction for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). He alleges the

_____

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, *res judicata* and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

district court erred in denying his motion to suppress evidence obtained during a search of his home because the affidavit in support of the search warrant failed to establish probable cause. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm Mr. Robbins's conviction.

## I. Factual Background

In disposing of Mr. Robbins's appeal, we summarize the facts contained in the record on appeal and relied on by the district court which are addressed in its memorandum order denying Mr. Robbins's motion to suppress. In September 2008, Maryland law enforcement arrested and charged Mr. Robbins with six firearms offenses, including three counts of possession of a firearm by a convicted felon and three counts of having a handgun in a vehicle. After his release on bond, Mr. Robbins failed to appear in court and an arrest warrant issued. Sometime thereafter, Mr. Robbins returned to his home in Concordia, Kansas. On October 30, 2008, Mr. Robbins's sister-in-law, Jenny Parker, called Concordia Police Officer Douglas Thoman to report that someone told her Mr. Robbins was attempting to sell weapons and "could be transporting four AK-47 assault rifles and up to or around 4,000 rounds of ammunition." She also reported that her father, who is Mr. Robbins's father-in-law, told her "there was a loaded 12-gauge shotgun sitting next to [Mr. Robbins's] front door," and he had "weapons in the house with him." She further stated Mr. Robbins was trying to

pay someone to batter her and her mother, and she knew a warrant had been issued for his arrest. She also informed Officer Thoman that Mr. Robbins was a methamphetamine user and heavy drinker and she heard him say he was "not afraid to shoot anyone." Finally, she explained his two young children lived with him.

Following Ms. Parker's call, Concordia police assembled a six-person tactical team to execute an arrest warrant on Mr. Robbins, as requested by Maryland law enforcement officials. Included in the tactical team were Concordia Police Officers Thoman, Voelker, Davis, Beldon, and Fredrickson, and Detective Copple. They conducted surveillance of Mr. Robbins's residence and then had Ms. Parker call her sister, Gina Robbins, to get her and the two children out of the house. However, Mrs. Robbins only left with one child. Officers and Police Chief Danny Parker stopped Mrs. Robbins in her vehicle three blocks away from her home, after which they took her child to another location. With her cooperation, Police Chief Parker placed Mrs. Robbins in the front seat of his vehicle and drove to and parked at the north end of the block, approximately three lots away from her house.

The tactical team then stationed themselves around the house. Officer Thoman positioned himself on the southwest corner of the house behind an

evergreen tree only twelve to fifteen yards from the covered front porch and in direct line of sight to the front door, giving him an unobscured view. Once the team was in position, Mrs. Robbins contacted her husband by telephone, after which Police Chief Parker took the telephone and talked to Mr. Robbins, instructing him to send out his other child. Mr. Robbins complied by opening the front door and pushing his son out the door; as he walked out behind his son, Mr. Robbins continued to talk to Police Chief Parker on his cell phone. However, Officer Thoman "noticed a long black object in Mr. Robbins'[s] hand," which he described as a "black long-barreled weapon." As a result, Officer Thoman immediately signaled to Officer Voelker that Mr. Robbins possessed a weapon; in turn, Officer Voelker radioed the other tactical team members, informing them of Mr. Robbins's weapon possession. Other than Officer Thoman, none of the officers were in a line of vision which permitted them to see whether Mr. Robbins possessed a firearm.

After Mr. Robbins directed his son toward the lawn, he retreated back into the house. After a minute or two, he again exited the front door unarmed and continuing to speak on his cell phone. At that time he was arrested.

Later that day, Officer Thoman presented a federal magistrate judge an affidavit and application for a search warrant on the basis of Ms. Parker's

statements and his first-hand observations during the execution of the arrest warrant. In his affidavit, Officer Thoman stated he "noticed a long black object in Mr. Robbins'[s] hand that resembled a firearm." The magistrate judge questioned him on the topic, asking him if he knew if it was a firearm, and Officer Thoman explained he knew it was a firearm but did not know if it was a rifle or a shotgun. At that time, for the purpose of clarification, the magistrate judge asked Officer Thoman to alter the language of the affidavit from "resembled a firearm" to having seen "either a shotgun or a rifle." Accordingly, Officer Thoman crossed out the phrase "resembled a firearm" and handwrote the phrase "was either a shotgun or rifle."

The magistrate judge then issued the search warrant, permitting police to search Mr. Robbins's residence for firearms. Three of the same members of the tactical team, Officers Voelker, Davis, and Beldon, as well as another officer, executed the warrant, finding, among other things: (1) parts to an AK-47 beside the middle bedroom door; (2) two AK-47's on the middle bedroom closet floor; (3) a shotgun on the east bedroom closet floor; (4) several boxes of ammunition found in the east bedroom; and (5) a green military duffel bag containing an AK-47 with a loaded magazine. However, they did not find a shotgun near the front door as indicated by Ms. Parker and her father.

On January 21, 2009, a grand jury indicted Mr. Robbins on five counts of being a felon in unlawful possession of a firearm in and affecting interstate commerce in violation of 18 U.S.C. § 922(g)(1). Thereafter, Mr. Robbins filed a motion to suppress all evidence seized from his residence, alleging Officer Thoman's statements in the affidavit were insufficient to establish probable cause. In support, he claimed Officer Thoman's recounting of Ms. Parker's statements lacked credibility, given she was motivated by animosity toward him and she did not disclose who provided her information on the four AK-47 rifles. He also alleged Officer Thoman's observations during the arrest were unreliable because he altered the affidavit from "firearm" to "shotgun or rifle" when he sought the magistrate judge's approval of the search warrant.

After the government filed its response opposing Mr. Robbins's motion to suppress, the district court held a hearing at which both parties presented argument and evidence. The government presented the testimony of Officers Thoman and Voelker. Officer Thoman testified: (1) his view of Mr. Robbins was not obstructed, even though he was behind an evergreen tree and the porch had a support beam; (2) he had no doubt Mr. Robbins possessed a "black long barreled weapon" when he first exited the house with his son; (3) Mr. Robbins re-entered the house and only one or two minutes lapsed before he exited the house again without a firearm; (4) Officer Thoman signaled to Officer Voelker that Mr.

Robbins possessed a gun; and (5) while they did not find a firearm by the front door or in the front living room, the living room was only fourteen feet by twelve feet, with the bedrooms containing the discovered firearms off to the side.

Officer Voelker's testimony corroborated Officer Thoman's testimony. He explained Officer Thoman had a direct line of sight to the front door. He also testified Officer Thoman signaled to him when Mr. Robbins first exited the house that he had a gun, after which Officer Voelker radioed the other officers, informing them of Mr. Robbins's weapon possession.

Mr. Robbins's only witness was his wife. She testified Police Chief Parker took her to the north end of the block, three lots or approximately seventy feet from her home, where he detained her in the front seat of his vehicle. She testified she could see her husband's hand on their son and a cell phone in his other hand when he first exited the house, but she did not see anything in his hands "that could be misconstrued as a firearm." However, she also admitted that while she could see the front door of their house when it was open, she was positioned at an angle that did not permit her to see everything in the door frame. She also testified that once her husband came out with her son, he did not go back into the house.

Following the hearing, the district court issued an order and memorandum denying Mr. Robbins's motion. As to probable cause in support of issuance of the warrant, it determined Officer Thoman's first-hand observation of seeing "a long black object in Mr. Robbins'[s] hand that was either a shotgun or a rifle" was also corroborated by Ms. Parker's statement Mr. Robbins kept a weapon by the door. Accordingly, the district court concluded the affidavit provided the required substantial basis for the magistrate judge's reasonable inference Mr. Robbins maintained a firearm in his home and conclusion the affidavit established the requisite probable cause for a search warrant.

On the issue of Officer Thoman's handwritten change on the affidavit, it noted Mr. Robbins did not cite to any authority, nor could the district court find any, holding an interlineation on an affidavit per se discredits a magistrate judge's determination of probable cause, especially when it occurred in the presence and at the advice of a neutral and detached magistrate. It further explained the magistrate judge's inquiry into the precise language used in the affidavit was intended to clarify Officer Thoman's meaning rather than to alter what took place.

With respect to the testimony offered at the hearing, the district court found Officer Thoman's hearing testimony Mr. Robbins possessed a firearm was more

reliable than Mrs. Robbins's testimony he did not have a gun, given Officer Thoman was only fifteen yards from the porch with a direct line-of-sight view to the door, while Mrs. Robbins stated she was at least seventy feet from the door and positioned at an angle which did not allow her to see everything occurring in the door frame. It also found Officer Thoman's testimony was corroborated by Officer Voelker, who testified Officer Thoman immediately signaled to him that Mr. Robbins possessed a firearm when he first exited the front door.

Alternatively, the district court held that even if the affidavit did not support a finding of probable cause, the good faith doctrine in *United States v. Leon*, 468 U.S. 897 (1984), applied, and Mr. Robbins failed to establish any exception to it. In so holding, it determined the affidavit supporting the warrant contained a sufficient indicia of probable cause, based on Officer Thoman's hand signal and Officer Voelker's subsequent radio signal to other officers that Mr. Robbins possessed a firearm, so that those same officers could reasonably and in good faith rely on the affidavit stating Mr. Robbins possessed firearms when they executed the search warrant. It also found the officers, in executing the search warrant, could reasonably rely on Ms. Parker's statements Mr. Robbins possessed weapons, given her familial connection to the home and her accurate statements concerning his outstanding arrest warrant and the fact his two children were living in the home.

Following the suppression hearing, Mr. Robbins entered into a conditional plea agreement, pleading guilty to count five of being a felon in illegal possession of a firearm, but reserving his right to appeal the district court's denial of his motion to suppress. After the district court accepted Mr. Robbins's guilty plea, it sentenced him to forty-six months imprisonment and three years supervised release.

## II. Discussion

Mr. Robbins now appeals the district court's denial of his motion to suppress evidence, raising the same issues he raised before concerning the reliability of Officer Thoman's and Ms. Parker's statements and the alteration on the affidavit. In turn, the government continues to oppose Mr. Robbins's arguments in support of his motion to suppress.

In addressing Mr. Robbins's contentions, we first consider our standard of review:

> When reviewing a district court's denial of a motion to suppress, this court accepts the district court's factual findings unless they are clearly erroneous, viewing the evidence in the light most favorable to the government. However, the ultimate determination of reasonableness under the Fourth Amendment is a question of law and is reviewed de novo under the totality of the circumstances.

*United States v. Basham*, 268 F.3d 1199, 1203 (10th Cir. 2001). "[O]ur review of

a magistrate judge's probable-cause ruling is more deferential." *United States v. Biglow*, 562 F.3d 1272, 1280 (10th Cir. 2009). We generally "give considerable deference to a magistrate's determination of probable cause; a reviewing court's only duty is to ensure that the magistrate had a substantial basis for concluding that probable cause existed." *United States v. Mathis*, 357 F.3d 1200, 1205 (10th Cir. 2004) (internal quotation marks omitted).

As to the applicable legal principles involved, it is clear probable cause is necessary for issuance of a search warrant, as supported by an oath or affirmation. *See id.* at 1203. We review the sufficiency of an affidavit on which a warrant is issued by looking at the totality of the circumstances and ensuring the magistrate judge had a substantial basis for concluding probable cause existed. *See Basham*, 268 F.3d at 1203. "Probable cause to issue a search warrant exists only when the supporting affidavit sets forth facts that would lead a prudent person to believe there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* However, we do not require "hard evidence or personal knowledge of illegal activity [to] link a Defendant's suspected unlawful activity to his home." *Biglow*, 562 F.3d at 1279 (internal quotation marks omitted). Instead, "a sufficient nexus is established once an affidavit describes circumstances which would warrant a person of reasonable caution in the belief that the articles sought are at a particular place." *Id.* (internal quotation marks

-11-

omitted).

As a result, "judges may rely on the opinion of law enforcement officers as to where contraband or other evidence may be kept" as well as inferences reasonably drawn from the evidence connecting a defendant's suspected activity to his residence. *Id.* at 1279-80. Judges may also rely on hearsay evidence which "may form the basis for a probable cause determination" as well as "information received through an informant, ... so long as the informant's statement is reasonably corroborated by other matters within the officer's knowledge." *Mathis*, 357 F.3d at 1204 (internal quotation marks omitted). While an "informant's veracity, reliability, and basis of knowledge [are] relevant factors to evaluate," so is "a law enforcement agent's opinion, based upon his professional expertise, that evidence of illegal activity will be found in the place to be searched." *Id.* at 1205.

In applying our standard of review and the applicable rules in evaluating probable cause for issuance of a search warrant, we conclude the district court in this case did not commit any error in denying Mr. Robbins's motion to suppress. The affidavit in question plainly stated Officer Thoman personally observed a long-barreled shotgun or rifle in Mr. Robbins's possession the first time he exited the house. This alone would be sufficient for the magistrate judge to have

-12-

determined a substantial basis existed that evidence of the crime of being a felon in possession of a firearm was probably present in the place to be searched and thereby conclude the requisite probable cause was present for the purpose of issuing the warrant.

The fact the magistrate judge asked Officer Thoman to clarify what he meant by "firearm" in the affidavit and, in turn, had Officer Thoman insert his clarification into the affidavit that it "was either a shotgun or a rifle" does not alter what Officer Thoman saw. While Mr. Robbins suggests this alteration evidences the magistrate judge's lack of objectivity and neutrality, we disagree. Instead, the magistrate judge was acting in a detached and neutral capacity by ensuring that what Officer Thoman saw was indeed a firearm and attempting to narrow down the type of firearm seen. In addition, the magistrate judge was able to observe Officer Thoman during this discussion for the purpose of making a credibility determination, to which we give due deference.

In addition to Officer Thoman's first-hand account of seeing Mr. Robbins with a firearm, the affidavit also advised the magistrate judge that Mr. Robbins was a convicted felon with six recent outstanding firearms violations, three of which involved possession of a firearm by a convicted felon. Thus, even without Ms. Parker's hearsay statements in the affidavit, such reliable information

showing Mr. Robbins's recent history of illegal possession of firearms and the outstanding warrant related thereto tended to corroborate Officer Thoman's statement Mr. Robbins possessed a firearm on the day in question.

With respect to the statements made by Ms. Parker, it is clear she had a familial relationship with Mr. Robbins and that at least one source of her hearsay information was sufficiently identified as her father, who saw a shotgun by the front door and knew weapons existed in the home. As previously stated, the magistrate judge may rely on such hearsay information in making a probable cause determination, and this information clearly corroborated Officer Thoman's statement he observed Mr. Robbins holding a shotgun or rifle. In addition, the reliability of Ms. Parker's statements was supported, not only by her and her father's familial relationship to Mr. Robbins, but her accurate information as to Mr. Robbins's outstanding warrant for gun possession. Finally, it is obvious the magistrate judge was aware of Ms. Parker's apparent animosity toward her brother-in-law, given her accusation regarding his desire to batter her and her mother; however, that does not require the magistrate judge to totally discount the information she provided but merely to weigh that information with the other information provided. Thus, we agree with the district court a substantial basis existed for the magistrate judge to conclude the affidavit alleged sufficient facts to establish probable cause of illegal activity evidence at Mr. Robbins's home.

With respect to the district court's determinations on the evidence presented at the suppression hearing, it found Officer Thoman's testimony on Mr. Robbins's gun possession was reliable based on his first-hand observations and the fact his testimony was corroborated by Officer Voelker, who testified Officer Thoman signaled to him that Mr. Robbins possessed a firearm. In addition, the district court had an opportunity to observe these witnesses at the suppression hearing and make a credibility determination. As we have long held, "[t]he credibility of witnesses, the weight to be given evidence, and the reasonable inferences drawn from the evidence fall within the province of the district court." *United States v. Higgins*, 282 F.3d 1261, 1269-70 (10th Cir. 2002).

The only contrary testimony offered at the suppression hearing to counter this evidence was Mrs. Robbins's testimony. But the district judge, who also had the opportunity to observe her and make reliability and credibility determinations, considered her admission she could not entirely observe the events on the porch and explicitly discounted her testimony Mr. Robbins did not possess a gun, which, unlike Officer Thoman's testimony, was uncorroborated by any other evidence. We further point out that while Mrs. Robbins admitted she could not see everything occurring in the door frame of the porch, Officer Thoman unequivocally testified he had "no doubt" Mr. Robbins possessed a firearm.

-15-

Based on the totality of the circumstances presented, it is clear probable cause existed for issuance of the search warrant. Therefore, we need not alternatively address the *Leon* good-faith doctrine, other than to agree with the district court the officers executing the search warrant had an objective good-faith belief the warrant was properly executed by a neutral magistrate. *See United States v. Campbell*, 603 F.3d 1218, 1226 (10th Cir. 2010), *petition for cert. filed* (Aug. 3, 2010) (No. 10-5843).[1] As the district court concluded, the affidavit supporting the warrant contained a sufficient indicia of probable cause based on Officer Thoman's hand signal and Officer Voelker's subsequent radio signal to

---

[1] As we stated in *Campbell*:

When an officer searches pursuant to a warrant, *Leon* generally requires we presume the officer acted in good-faith reliance upon the warrant. It is only when an officer's reliance was wholly unwarranted that good faith is absent. But this presumption is not absolute. As we have reiterated many times, a warrant subsequently determined to lack probable cause demands suppression of the resulting evidence in at least four situations: (1) when the issuing magistrate was misled by an affidavit containing false information or information that the affiant would have known was false if not for his reckless disregard of the truth; (2) when the issuing magistrate wholly abandons [his or] her judicial role; (3) when the affidavit in support of the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) when a warrant is so facially deficient that the executing officer could not reasonably believe it was valid.

*Id.* at 1225-26 (internal quotation marks, citations, and alterations omitted). Another instance when the good faith doctrine may not apply is when the warrant's flaw results from recurring or systemic police negligence. *See id.* at 1226. Nothing in the record indicates any of these exceptions apply here.

the other officers that Mr. Robbins possessed a gun, so those same officers could reasonably rely on the affidavit stating Mr. Robbins possessed firearms when they executed the search warrant. As the district court also determined, the officers executing the search warrant could reasonably rely on Ms. Parker's statement Mr. Robbins possessed weapons, given her familial connection to the home and the proven accuracy of her statements he had an outstanding arrest warrant and two children living in the home.

## III.  Conclusion

For the reasons contained herein, we **AFFIRM** Mr. Robbins's conviction.

**Entered by the Court:**

**WADE BRORBY**
United States Circuit Judge